# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL TROUTMAN, | ) |
| Plaintiff, | ) |
| | ) CAUSE NO. 3:17-CV-409–PPS-MGG |
| vs. | ) |
| MIAMI CORRECTIONAL FACILITY, *et. al.*, | ) |
| Defendants. | ) |

## OPINION AND ORDER

Michael Troutman, a *pro se* prisoner, filed a complaint that can only be described as a blunderbuss. It's brought against 19 defendants that he encountered while incarcerated at the Miami Correctional Facility. ECF 5. At times, Troutman's complaint is unclear. As best I can tell, the gist of his complaint centers around two things: his employment at a prison work program named the Prison Enterprise Network (PEN); and his inability to attend Friday evening Islamic services at the prison. As for the specific claims he is raising, although again unclear, I believe they are set out in his request for declaratory judgment. *See* ECF 5 at 44-45. Thus, for purposes of clearly identifying his claims, I will rely on that section of Troutman's complaint for guidance.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations

1

omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

As a threshold matter, Troutman's complaint contains several claims against the PEN program and the Miami Correctional Facility ("Miami"). However, neither are suable entities because they are merely divisions of the Indiana Department of Correction. Neither PEN nor Miami are legal entities separate from the agency they serve, and therefore they are not subject to suit. *See Whiting v. Marathon Cty. Sheriff's Dep't*, 382 F.3d 700, 704 (7th Cir. 2004).

## I. Free Exercise and RLUIPA Claims

Troutman's first claim is that Superintendent Kathy Griffin, Assistant Superintendent of Operations Craig Grage, Assistant Superintendent of Programs Sharon Hawk, Chaplain William Croto, and Chaplain Alex Beane violated his right to free exercise of his religion. Troutman, a Muslim, was hired as an inmate worker in the PEN program in May 2015. ECF 5 at 14. His shift at PEN was from 6:45 a.m. to 2:15 p.m., Monday through Friday. According to Troutman, between May 2015 and January 2016, he was permitted to go directly to Friday prayer after the conclusion of his shift. *Id.* at 15. However, on February 5, 2016, Chaplains Croto and Beane told him that Assistant Superintendent Hawk said he could not go to Friday service anymore. He claims that he sent complaints to Grage, Hawk, and Griffin but they never responded. He also sent a complaint to Chaplain Beane, who

2

responded that Troutman had not been permitted to go to the service because he had turned in his paperwork late.

In March 2016, Troutman submitted a complaint with the Department of Justice and sent a copy of his complaint to Assistant Superintendent Hawk. He also wrote a complaint to Assistant Superintendent Grage, but Grage responded that he did not oversee prison programs and he forwarded the complaint to a different department within the prison. Troutman sent additional complaints to Hawk, Griffin, and Grage, and forwarded copies of his complaints to Defendants IDOC Commissioner Bruce Lemmon, IDOC Deputy Commissioner James Basinger, and Executive Director of IDOC Adult Facilities William Wilson.

In April 2016, Assistant Superintendent Hawk responded to Troutman's complaint. Hawk told Troutman that to fix his schedule conflict he would have to quit his job at PEN and apply for a different job. Hawk stated in her response that she would "make this happen." Two hours after he received Hawk's response, PEN Shop Supervisor Short informed Troutman that he had been fired because he was unhappy and had filed numerous grievances about the schedule conflict. Troutman claims that Short already had prepared a negative job evaluation for him, in anticipation of his termination. Short told him that the decision to terminate his employment had come from Miami, not PEN. Troutman claims that PEN Plant Manager Roark and Short then prepared a "false classification hearing report," ECF 5 at 26, and they again reiterated that the termination decision had come from Miami. He was given 90 days unpaid time to find another job.

After his termination, Troutman wrote to Hawk. Hawk claimed that she was not involved in his termination. He claims that when he wrote to Roark, Roark told him that he was fired because he had missed too many days of work. He claims that Classification Supervisor Clark told him that he was fired because he received a negative job evaluation. He also claims that he wrote to Doug Evans, the CEO of PEN, but Evans did not respond.

Troutman argues that Griffin, Grage, Hawk, Croto, and Beane violated his First Amendment right to free exercise of his religion by prohibiting him from attending Friday prayer after his shift ended at PEN. He also claims that these defendants violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA). Prisoners have a right to exercise their religion under the Free Exercise Clause of the First Amendment. *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). Nevertheless, restrictions that limit the exercise of religion are permissible if they are reasonably related to legitimate penological objectives, which include safety, security, and economic concerns. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

RLUIPA affords even broader protections than the First Amendment by providing that "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); s*ee generally Holt v. Hobbs*, 135 S. Ct. 853 (2015). A particular restriction imposes a substantial burden on an inmate's religious

4

practice when it " 'seriously' violates or contradicts an inmate's religious beliefs." *West v. Grams*, 607 F. App'x 561, 567 (7th Cir. 2015) (citation omitted). However, the statute does not authorize an award of money damages against state officials; an inmate may only obtain injunctive relief under RLUIPA. *See Sossamon v. Texas*, 563 U.S. 277, 285 (2011).

Troutman may proceed with his First Amendment claim against Griffin, Hawk, Croto, and Beane. At this stage of the litigation, it appears that Troutman, and other Muslim inmates in his job assignment, were prohibited from attending Friday night service because their job assignment conflicted with attendance at the service. However, it remains unclear whether there was a legitimate reason for imposing restrictions on this practice. But, given the inferences to which Troutman is entitled, he has stated a plausible claim against Defendants Griffin, Hawk, Croto, and Beane and may proceed against them in their individual capacities for monetary and injunctive relief. Troutman may also proceed against Defendant Griffin in her official capacity for injunctive relief for violating RLUIPA.

Defendant Grage, however, will be dismissed. When Troutman contacted Grage, Grage informed him that, as Assistant Superintendent of Operations, he did not oversee religious programs. Grage then forwarded Troutman's complaint to the appropriate department. Grage was not responsible for the alleged violations of Troutman's rights, and took action to see that his complaints were addressed by the appropriate people. Troutman has failed to allege how Grage was personally involved in violating his federal rights. Therefore, he may not proceed with his First Amendment claim against Grage.

Troutman also claims that Defendants Griffin, Grage, Hawk, Croto, and Beane violated his rights under RLUIPA by periodically cancelling the Friday prayer service. The Friday service was cancelled on April 3, 2015 and July 3, 2015 due to the State holiday of Good Friday and Independence Day. ECF 5 at 14. The facility cancelled these two services due to the unavailability of a chaplain or outside volunteer to lead the services, as well as staff shortages. The prayer service was again cancelled on January 1, 2016, presumably for the same administrative reasons. The cancellation of these three services over a nine-month period does not plausibly identify a substantial burden on Troutman's free exercise of his faith. *Cf. Turner v. Hamblin*, 590 F. App'x 616, 620 (7th Cir. 2014) (affirming denial of prisoner's claim that, in light of the frequently cancelled Islamic services, the prison's ban on inmate-led services substantially burdened his free religious exercise); *Maddox v. Love*, 655 F.3d 709, 718–19 (7th Cir. 2011) ("Prisons need not provide every religious sect or group within a prison with identical facilities or personnel and need not employ chaplains representing every faith among the inmate population"). Due to the *de minimus* nature of the cancellations, Troutman may not proceed on this claim.

## II. Retaliation Claims

Troutman also raises a number of retaliation claims. He claims that Superintendent Griffin, Assistant Superintendent Grage, and Assistant Superintendent Hawk colluded with PEN Plant Manager Sandy Roark and PEN Shop Supervisor Carolyn Short to fire him in retaliation for filing grievances regarding his access to Friday prayer service. ECF 5 at 30, 45. "To prevail on his First Amendment retaliation claim, [Troutman] must show that

(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Here, his prison grievances constitute protected speech. He claims that Hawk made the retaliatory decision to terminate him from the job, and that Short knowingly participated in the scheme. He has adequately pleaded his retaliation claim against Defendants Hawk and Short.

He has not, however, stated a plausible claim against Defendants Griffin, Grage, or Roark. He has not made any factual allegation that these Defendants were aware of the retaliatory plan prior to its enactment. His claim that he complained to these defendants *after* he was terminated is insufficient to establish these defendants' personal involvement in the retaliatory act itself. Thus, the retaliation claim against Defendant Griffin, Grage, and Roark will be dismissed.

Troutman also alleges that Grievance Specialist Brenda Bowman and Classification Supervisor Amy Clark retaliated against him for filing administrative grievances. He does not specify how they retaliated against him. ECF 5 at 45. His only factual allegation against these defendants is that they inadequately responded to grievances and complaints that he sent them. ECF 28-29. His allegations amount to little more than disagreement with the answers they provided to his complaints. Troutman has not stated a plausible claim of retaliation against Defendants Bowman and Clark because he has not sufficiently pled

7

retaliatory motive, and has not identified a deprivation that would likely deter First Amendment activity in the future. Therefore, the retaliation claim against Defendants Bowman and Clark will be dismissed.

Troutman's final retaliation claim is that Chaplain Beane and Sergeant Heater issued false conduct reports against him in retaliation for grievances that he filed. He asserts that Chaplain Beane falsely charged him with lying to staff, and that this charge was later dismissed by the disciplinary hearing officer. He claims that Heater falsely charged him with possession of unauthorized prayer oils. He argues that although prison staff ultimately permitted him to have his prayer oils, Heater had stored them in such a way that the oils had spilled and the bottles had emptied. Troutman may proceed with his retaliation claims against Defendants Beane and Heater.

### III.     Failure to Intervene Claims

Troutman argues that Defendants IDOC, Grievance Specialist Bowman, Classification Supervisor Clark, Director of Indiana Ombudsman Service Charlene Burkett, Director of Investigations and Intelligence Lorna Harbourgh, IDOC Commissioner Bruce Lemmon, Deputy Commissioner of Operations James Basinger, Executive Director of Adult Facilities William Wilson, and PEN CEO Doug Evans knew about the retaliation, but failed to intervene. A prison official "can be held liable under § 1983 if [he] (1) had reason to know that a fellow officer was . . . committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). Troutman does not allege that any of these defendants knew

he was going to be fired in retaliation, prior to his termination. Thus, it cannot plausibly be inferred that these defendants had a realistic opportunity to intervene and prevent his termination. He may not proceed with his failure to intervene claim against Defendants Bowman, Clark, Burkett, Harbourgh, Lemmon, Basinger, or Wilson.

Troutman may not proceed with his failure to intervene claim against the IDOC for an additional reason. Only a "person" may be sued under Section 1983. 42 U.S.C. § 1983. Neither a State nor its agencies are considered "persons" who may be sued. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989). In Indiana, the IDOC, as a state agency, is not considered a "person." *McDole v. Indiana Dept. Of Correction*, No. 2:11-cv-232, 2012 WL 130411 (S.D. Ind. Jan. 17, 2012) (noting that the IDOC is an arm of the State and not a "person" for the purposes of Section 1983). Therefore, Troutman's failure to intervene claim against the IDOC will be dismissed for this reason too.[1]

## IV. Equal Protection Claims

Troutman claims that Defendants Hawk, Roark, and Short's involvement in his termination was motivated by religious and racial animus in violation of the Equal Protection Clause. He claims that the prison strategically scheduled Christian services so that Christian inmates would not face a conflict between their prison job schedules and their religious service schedules. He also claims that similarly situated white workers were

---

[1] It is worth noting that the Eleventh Amendment bars a suit against a State or state agency in federal court unless the State has consented to be sued or Congress has abrogated the State's sovereign immunity. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). Thus, the IDOC would typically be entitled to immunity under the Eleventh Amendment in federal court. *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). However, when the State removes a case from state court to federal court, such as it did here, the State waives that immunity. *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 618-19 (2002).

allowed to remain employed at PEN, while he was terminated. Giving Troutman the deference his claims are due at this stage of the litigation, he has sufficiently stated an equal protection claim against Defendants Hawk, Roark, and Short. These allegations state a claim.

Nevertheless, as these claims move forward it will be important to keep in mind that the standards for evaluating race and religion claims are different in the prison context. Race claims do not afford nearly as much deference to the penological concerns of prison official:

> The right not to be discriminated against based on one's race is not susceptible to the logic of *Turner*. It is not a right that need necessarily be compromised for the sake of proper prison administration. On the contrary, compliance with the Fourteenth Amendment's ban on racial discrimination is not only consistent with proper prison administration, but also bolsters the legitimacy of the entire criminal justice system. Race discrimination is especially pernicious in the administration of justice. And public respect for our system of justice is undermined when the system discriminates based on race.

*Johnson v. California*, 543 U.S. 499, 510–11 (2005) (quotation marks and citation omitted).

On the other hand, the standard for religion claims is not nearly as strict.

> In providing [an] opportunity, the efforts of prison administrators, when assessed in their totality, must be evenhanded. Prisons cannot discriminate against a particular religion except to the extent required by the exigencies of prison administration. The rights of inmates belonging to minority or non-traditional religions must be respected to the same degree as the rights of those belonging to larger and more traditional denominations. Of course, economic and, at times, security constraints may require that the needs of inmates adhering to one faith be accommodated differently from those adhering to another. The treatment of all inmates must be qualitatively comparable.

*Maddox v. Love*, 655 F.3d 709, 719–20 (7th Cir. 2011) (citations, quotation marks, and brackets omitted).

V. **Conspiracy Claims**

Troutman claims that all Defendants conspired with each other to violate his federal rights. This claim implicates the intra-corporate conspiracy doctrine and will be dismissed. Under this doctrine, a "conspiracy cannot exist solely between members of the same entity." *Beese v. Todd*, 35 F. App'x 241, 243 (7th Cir. 2002) (internal quotation omitted) (each of the defendants were members of the same entity, the Wisconsin Department of Corrections, and thus could not be sued under Section 1985 for conspiracy). Therefore, this claim will be dismissed.

VI. **Due Process Claims**

Troutman claims that Defendants Hawk, Roark, and Short violated his due process rights by terminating his position at PEN. However, "[t]he Constitution does not give prisoners any substantive entitlements to prison employment." *Soule v. Potts*, 676 F. App'x 585, 586 (7th Cir. 2017); s*ee also DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000) (the Due Process Clause does not afford prisoners a liberty or property interest in their jobs and therefore inmate-plaintiff had no procedural due process claim regarding the loss of his job). This claim will be dismissed.

Troutman also alleges that Defendant Hawk violated his due process right to a fair and impartial decision-maker by presiding over his classification hearing. As part of his termination from PEN, Troutman's classification status was altered. He argues that Hawk

11

should not have considered the propriety of his classification change because she was involved in his termination and classification change from the beginning. To the extent that Troutman's amended classification resulted in an increase in his sentence, he was entitled to the procedural due process protections enumerated in *Wolff v. McDonnell*, 418 U.S. 539 (1974). One of these protections is the right to an impartial decision-maker. However, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). "Thus when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* Because Troutman has not established that his re-classification has been invalidated, he may not proceed with this claim.

ACCORDINGLY:

(1) Michael Troutman is **GRANTED** leave to proceed against Kathy Griffin, Sharon Hawk, Chaplain William Croto, and Chaplain Alex Beane in their individual capacities for monetary damages for violating his free exercise of religion in violation of the First

12

Amendment by prohibiting him from attending Friday worship services after the end of his work shift;

(2) Michael Troutman is **GRANTED** leave to proceed against Kathy Griffin in her official capacity for injunctive relief for violating his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA) by prohibiting him from attending Friday worship services after the end of his work shift;

(3) Michael Troutman is **GRANTED** leave to proceed against Sharon Hawk and Carolyn Short in their individual capacities for monetary damages for firing him in retaliation for filing administrative grievances, in violation of the First Amendment;

(4) Michael Troutman is **GRANTED** leave to proceed against Chaplain Alex Beane and Sgt. J. Heater in their individual capacities for monetary damages for retaliating against him by issuing false Conduct Reports for filing administrative grievances, in violation of the First Amendment;

(5) Michael Troutman is **GRANTED** leave to proceed against Sharon Hawk, Sandy Roark, and Carolyn Short in their individual capacities for monetary damages for intentionally discriminating against him on the basis of his race or religion in violation of the Fourteenth Amendment Equal Protection Clause;

(6) **DISMISSES** all other claims;

(7) **DISMISSES** Miami Correctional Facility, Craig Grage, Sgt. Brenda Bowman, Amy Clark, Lorna Harbourgh, The Indiana Dept. of Correction, Bruce Lemmon, James Basinger, William Wilson, Charlene Burkett, Prison Enterprise Network, and Doug Evans;

(8) **DIRECTS** the Clerk to lift the stay in this case; and

(9) **ORDERS**, pursuant to 42 U.S.C. § 1997e(g)(2), that Kathy Griffin, Sharon Hawk, Chaplain William Croto, Chaplain Alex Beane, Carolyn Short, Sandy Roark, and Sgt. J. Heater respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

ENTERED: August 25, 2017  /s Philip P. Simon
Judge
United States District Court