# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL TROUTMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Cause No. 3:17CV409-PPS/MGG |
| vs. | ) |
| | ) |
| MIAMI CORRECTIONAL FACILITY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Michael Troutman, a *pro se* prisoner, moves for reconsideration (ECF 11, 15) of the screening order issued pursuant to 28 U.S.C. § 1915A. ECF 9. Specifically, he argues that his First Amendment retaliation claims against Defendants Griffin, Grage, Roark, Bowman, and Clark should not have been dismissed. The facts underlying the complaint were fully outlined in the prior order and will not be repeated here, except as relevant to the present motion.

As outlined in the screening order, I must review a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(a), (b). To survive dismissal, a complaint must contain enough factual matter to state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff

1

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 603. Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). Nevertheless, I must bear in mind that "[a] document filed *pro se* is to be liberally construed[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Troutman first asks that I reconsider the dismissal of his retaliation claims against Defendants Griffin, Grage, and Roark. In his complaint, Troutman claims that Defendants Griffin, Grage, and Hawk (the facility Superintendent and Assistant Superintendents) colluded with Defendants Roark and Short (supervisors of the prison employment program, PEN) to fire him from his prison job in retaliation for grievances he filed regarding his access to Friday prayer service. While he was granted leave to proceed with his claims against Defendants Hawk and Short, he was denied leave to proceed against Defendants Griffin, Grage, and Roark because he had not made any factual allegation that these defendants were aware of the retaliatory plan *prior* to its enactment. Rather, he claimed that he complained to these defendants after he was terminated. In his present motion, Troutman asks that I reconsider this ruling, pointing to specific sections in his complaint, which he believes identifies a plausible retaliation claim:

> Plaintiff upon information and belief strongly believes Hawk set off a series of events on April 08, 2016 that resulted in a chain reaction, culminating in Plaintiff's termination from PEN. Upon further information and belief,

2

> Plaintiff believes that e-mails exist from Hawk to PEN's Roark and Short on or around April 08, 2016, ordering them to fire Plaintiff. Plaintiff also believes that e-mails from exist (sic) from Roark and Short among themselves discussing the particulars of the scheme to illegally terminate Plaintiff on or around April 08, 2016. Plaintiff also believes that e-mails from exist (sic) from Roark and Short responding back to Griffin, Hawk and Grage on or around April 08, 2016.

ECF 5 at 26. Troutman's complaint also alleges:

> MCF, Griffin, Grage and Hawk colluded with PEN, Roark and Short to terminate Plaintiff from his PEN job in retaliation for filing grievances and complaints concerning the routine cancellation of his Friday Prayer, and the total ban on his attending Friday Prayer implemented against him shortly thereafter. MCF, Griffin, Grage, Hawk, PEN, Roark and Short knew the termination would put the kibosh on Plaintiff's goal of reaching minimum wage. When Hawk's response of April 08, 2016 to Plaintiff's grievance to resign his job and that she would make that happen, and the negative job evaluation and reclassification a few hours later are viewed in isolation; they appear to be procedurally correct. However, when viewed together, the chronology of events presents a very colorable claim of textbook retaliation. It is undeniable that a series of chain events took place on April 08, 2016. Commencing with Hawk's response to Plaintiff's grievance earlier in the day and culminating in his firing a few hours later the same day. Plaintiff also notes that there is a systematic and long-standing pattern, practice and custom dating back to the early 2000's, long before Plaintiff's arrival at MCF and PEN using negative job evaluation to terminate Muslims when they complained about being able to attend Friday Prayer.

ECF 5 at 30.

Troutman also filed new documentary evidence indicating that Roark was involved in his termination. He filed a document from his employment record that contained the following notation: "4/8/16 Info from S.R. + S. Hawk - offender very unhappy with working and not attending religious services. Per discussion w/ S. Roark reclass to idle. Offender can look for a job that will not conflict with religious services." ECF 15-5. With

this new evidence, Troutman has plausibly claimed that Roark was involved in his termination, and he may now proceed with his retaliation claim against Roark.

Respectfully, however, I do not find anything in the complaint, or motion to reconsider, that changes my conclusion regarding Troutman's retaliation claim against Griffin or Grage. Troutman's allegation that he believes these defendants participated in email communications "discussing the particulars of the scheme to illegally terminate Plaintiff" is simply speculation; it is not plausible without additional factual allegations. If Troutman later discovers evidence that lends credence to this claim, he may seek to amend his complaint to add these parties.[1] However, unlike Defendants Hawk, Short, and now Roark, Troutman has not made a plausible claim that Defendants Griffin or Grage (officials responsible for supervising operations within the prison) were personally involved in his termination. Rather, his claims against Griffin and Grage rely entirely on legal conclusions, not factual allegations. While legal conclusions can provide a complaint's framework, these conclusions must be accompanied by well-pleaded factual allegations in order to move the claims from conceivable to plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). "[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and citation omitted). Troutman's allegations against Griffin and Grage do not satisfy this standard. Thus, his request that I reconsider the dismissal of these defendants is denied.

---

[1] While Troutman must be mindful that his opportunity to add these defendants to his complaint is subject to a two-year limitations period, this limitations period does not expire until April 2018, at the earliest.

Next, Troutman claims that I should not have dismissed his retaliation claims against Grievance Specialist Bowman and Classification Supervisor Clark. He claims that Defendants Bowman and Clark retaliated against him for filing administrative grievances. Troutman argues that the following sections of his complaint sufficiently state a retaliation claim against Defendants Bowman and Clark:

> The same day [April 8, 2016], Plaintiff obtained a formal grievance from his counselor and submitted it to Sgt. Bowman, MCF Grievance Specialist. Plaintiff submitted a written inquiry to Bowman on May 10, 2016 and May 26, 2016 because Bowman had not responded to his formal grievance against Hawk, nor issued him a receipt or informed him that an extension of time had been granted. On May 26, 2016, Plaintiff also requested grievance appeal forms from Bowman so he could move to the next step. Bowman never responded concerning the missing formal grievance against defendant Hawk ... At all times relevant to this complaint, Sgt. Bowman has actively colluded and conspired with defendant Hawk to protect MCF and Hawk, to conceal, obstruct any meaningful investigation into Plaintiff's allegations and cover-up the retaliation against Plaintiff.

ECF 5 at 37-38.

> Moreover, Sgt. Bowman has repeatedly revealed that she is overtly biased and partial by stating that she is a correctional sergeant first. This means that Bowman will do whatever she has to do to protect the MCF administration, IDOC and PEN and render grievance decisions that further that protection. Moreover, Bowman has knowingly and intentionally altered, destroyed and falsified documents as part of the administrative cover-up.... Defendant Bowman has actively conspired with MCF, IDOC, PEN and named defendants to maintain the cover-up.

ECF 5 at 39.

> On April 18, 2016 Plaintiff also wrote to defendant Amy Clark, MCF Classification Supervisor and explained the foregoing to her and requested a waiver to seek another job and further investigations. Plaintiff related to Clark that Hawk had retaliated against him for filing grievances and complaints concerning his Friday Prayer. Like the rest of MCF administration

5

and the IDOC, Clark recklessly disregarded the material facts and refused to recognize the causal link between defendant Sharon Hawk's grievance response of April 08, 2016 and Plaintiff's termination later the same day. Clark's focus was solely on the outcome of the negative job evaluation. **See Plaintiff's Documents at page(s) 80-81.** At no point has PEN nor MCF argued that Plaintiff did not perform his job adequately, or caused disruption to production schedules or caused disruption to other workers. Nor did the negative job evaluation or the reclassification indicate Plaintiff did not perform his job adequately or caused disruption to production schedules or caused disruption to other workers. Clark conspired with Hawk, Bowman, Griffin, Grage, PEN, and Roark and Short to retaliate against Plaintiff and remove him from his PEN prison job because he filed grievances. Clark also did her part to maintain the cover-up by refusing to investigate. The suspicious timing of Plaintiff's firing should have been reason enough to investigate Plaintiff's claims of retaliation, racial and religious discrimination further.

ECF 5 at 41 (emphasis in original).

In his allegations, Troutman does not identify any retaliatory action that would deter an inmate of ordinary firmness from pursing his First Amendment right to file prison grievances in the future. *See West v. Grams*, 607 Fed. Appx. 561, 565 (7th Cir. 2015). He merely argues that defendants Bowman and Clark did not believe the claims in his grievances, and as a consequence, they inadequately responded and investigated the claims. It is not plausible that a prisoner of ordinary firmness would be deterred from filing prison grievances because his grievances were not answered to his satisfaction; undoubtedly, most grievants are not entirely satisfied by the responses to their complaints. Based on what I have before me, no claim of unconstitutional retaliation is sufficiently pled against Bowman or Clark.

ACCORDINGLY:

(1) Plaintiff's motions to reconsider (ECF 11, 15) are **GRANTED in part**.

(2) Plaintiff Troutman is **GRANTED** leave to proceed against Sandy Roark in her individual capacity for monetary damages for firing him in retaliation for filing administrative grievances, in violation of the First Amendment.

(3) Troutman's motions to reconsider (ECF 11, 15) are **DENIED in part**, with respect to his retaliation claims against Kathy Griffin, Craig Grage, Sgt. Brenda Bowman, and Amy Clark.

(4) The Clerk of Court and the United States Marshals Service are **DIRECTED** to issue and serve process on Sandy Roark with a copy of this order, the screening order (ECF 9) and the complaint (ECF 1) as required by 28 U.S.C. § 1915(d).

(5) Pursuant to 42 U.S.C. § 1997e(g)(2), Sandy Roark is **ORDERED** to respond only to the claim for which the plaintiff has been granted leave to proceed in this screening order, as provided for in the Federal Rules of Civil Procedure and Local Rule 10-1(b).

**SO ORDERED.**

ENTERED: October 24, 2017.

                                                             /s/ Philip P. Simon  
                                                            Judge  
                                                            United States District Court